David Rosenfeld, on behalf of the union. We've lost our whole audience. I think there's some people in my office watching, so I'll have to behave. I'm going to concede some issues here that will make this case easier to decide and perhaps more difficult for me to prevail. But I'll begin by reminding Judge Rawlinson that I was here a year ago. You don't have to remind me. I remember. And I lost. This case is déjà vu all over again. It isn't déjà vu because that was a case about picketing. Right. And the panel that ruled against my client expressly said that was a matter of conduct. The prior Local 70 case, which I also argued in this Court, although I can't remember whether it was in this courtroom or not, had the same problem. It was conduct. This case is not a conduct case. So we begin from that premise. It's solely a speech case, and the Board, in its findings, does not refer at all to the picketing by the other union. It's simply a request. I will concede to you. So in order for you to prevail in this case, we would have to come to the determination that this is speech as opposed to picketing. Yes. And I will reserve four minutes for rebuttal. All right. And that's my argument, that this is speech and not picketing nor a threat of picketing. And I will concede that the speech that the business agent engaged in violates the act as the Board presently interprets the words inducement and encourage. So if I don't win on the First Amendment argument, I lose unless the Court finds a way to avoid the First Amendment argument. And I will further concede that the Board is right that it has in a few cases, and this Court in one case has addressed this issue. In 1965, well before I began practice, this Court heard the Painter's case. I'm only noting that because I went back and looked at these cases, and the first 8B4 case I argued in this case was in this Court was in 1979. So I've been after 8B4 for a long time. In the 1965 case, a Painter's case, you had a business agent who went to a job site, made no threat of picketing, and simply said to the Painters who were there, this product is unfair, which was, in the Board's view, a request that they not handle the product, which was secondary boycotting. And when you go back and look at the cases, the Weatherstone and the Springdale job sites, where this agent said that, the Board found it was 8B4 single-eye conduct, and this Court affirmed without reaching any of the First Amendment issues that now read in the current jurisdiction, or current jurisdiction that jurisprudence require. So I concede that unless you're willing to apply a strict scrutiny standard to this speech, or even an intermediate scrutiny standard to this speech, I lose under current Board law. And I will say that in looking at the 1965 case, I think that's easily resolvable under a Gammey v. Wilson kind of argument, that this Court, en banc, has already made it clear that strict scrutiny applies to speech cases. My best case is Swisher. But there are at least three. Ginsburg-Miller, do you have a case that talks about the First Amendment in the context of a secondary boycott? There are plenty of cases. In fact, there is. And that says that it's picketing, that it's picketing as opposed, that it's speech as opposed to picketing? Yes. And that's DiBartolo, which was a pure speech case in which the union leafleted and did not engage in picketing. And the Supreme Court said that we're going to interpret 8b-4-ii as to permit this speech, otherwise we have a constitutional problem. It was constitutional avoidance. Was that a secondary boycott case? Absolutely. The union went out and passed out leaflets around a big shopping mall asking patrons not to patronize the mall. It was secondary. There was no question about it. But the Court said we're not going to interpret 8b-4-ii to prohibit that kind of secondary boycotting. No picketing, no set of strike, because otherwise it creates a First Amendment problem, which this case squarely presents to this Court. You had James Alvarez simply asking people to do something, which is why when I read Seneng Smith v. USA, I was like almost really excited here, because keep in mind that under the Act, these workers had a right to leave the job site. That's not prohibited by the law. They could lawfully talk among themselves, these CMC rebar employees, and say we don't like the fact that there's another contractor on the job who doesn't pay our workers correctly. We want to leave. That right to leave is protected by the 13th Amendment, is protected by the At-Will Employment Doctrine. What isn't protected is the union encouraging or appealing to them to do that. So it's not the conduct that's restricted by this application in this case. It's the conduct of the union officials. It's not the conduct. It is the appeal. It is the verbal message. And you remember Swisher. Swisher But why isn't that conduct? If this Court wants to treat words as conduct, you've expanded what is conduct, because all the – again, it's a question of conduct. Swisher talks about expressive conduct. O'Brien, Cohen, these are all cases where there's expressive conduct. There's conduct associated with this speech, but this Court and the Supreme Court has made it clear that you look at are you focusing on the conduct, meaning holding the sign, or is the Court focusing on the words that are said? So what do we do with the language in the IBEW case from 1951, which says that it is the – the statute is aimed at the objective of the union's secondary activities and not the quality of the means employed to accomplish that objective. So the motivation, it seems to me that IBEW is saying that the motivation for the statute was to target the objective of the secondary activities rather than the means employed. That's contrary to the Board's assertion in its brief in the Board law. The Board doesn't say it's a matter of means, it's a matter of object. And the IBEW 401 case, which we've briefed extensively, and I'll just, again, focus on something here, that the IBEW representative, a man named Patterson, went to the job site twice and said to the carpenter employees, who are members of the carpenters' union, this job is unfair. Now, under current Board law, having said that this job is unfair, that would be a violation of 8B4, as it is in this case. But in IBEW 501, the Board did not assert that those two conversations were unlawful. The question presented to the Supreme Court, the Supreme Court makes it clear that what they're concerned about is not Patterson's appeal or inducement, but rather the fact that then Patterson puts up a picket sign and goes to the contractor and says, you want to get rid of the pickets? Get rid of the electrical subcontractor, and he does. Actually, the electrical subcontractor voluntarily leaves the project. So IBEW 501 is not only distinguishable, it's actually sort of supportive of my point that the Supreme Court found that speech element to be a violation of the law, that is, the union representative saying to the carpenters it's unfair. What it found unlawful, because it refers to picketing seven times in the opinion, was the union's picket sign followed by the call to the general contractor saying, if you want to get rid of the picket, you got to get rid of the subcontractor. And so that statement evidences the union's purpose, which was secondary boycott. Right. So if you stand outside with the picket sign and say, don't employees of Employer A don't cross here because we have a dispute with Employer B, that's conduct and that's a secondary boycott? No question, that's a secondary boycott. But if you call the employees of the other contractor and say, don't go to work tomorrow because we've got a dispute with this other guy, that's speech. That's speech. That's what we're talking about. That's what we're talking about. That's exactly what Judge Schroeder. What is the, you've been around for a long time here, and what is the closest case that draws that distinction in the labor context? In the labor context, in this context, there is no case, and that's the problem because we're here today in the- Why should we draw that distinction when the, what the Congress had in mind was to, to cabin disputes with the employer from conduct discouraging employees of other employers to deal with the first employer? If that's the purpose, then why doesn't going with emails and telephone calls and all that offend the purpose of Congress? There are two answers. It isn't clear to me that Congress, when it enacted the Taft-Hartley Act, understood that it was banning pure speech because what the Congress was focused on was picketing, which was the union's weapon. Number two, we're now well beyond that point. We're now faced with strict scrutiny. And if it's mere speech, asking people to do something that's legal for them to do, there is no grounds to say you can't ask people or appeal to them to do something which is legal. And if you look at Reed, this is the worst kind of content regulation. Only this union cannot say those words. Unions that are public sector unions could do exactly this. A Railway Labor Act union could do this. The individuals on the job site could make the same appeal. A church could make the same appeal. A competitor could make this appeal. So there's no way to survive strict scrutiny or even intermediate scrutiny because, in the words of this Court and the Supreme Court, this is wildly under-inclusive, meaning it targets only speech by a union. It doesn't target speech by anybody else, which kind of undermines the First Amendment aspect of this. But isn't that something Congress would need to address by amending the statute? That would be lovely if Congress would do that, but I'll close this part of my argument by saying we're here today. In 1947, this law was enacted, amended in 59. Reed, Citizens United, all the other jurisdictions of the Supreme Court, including Janus, are now before us, and this Court is faced with a problem whether it's going to ignore that First Amendment jurisdiction and say the Board can limit speech or not. Let me just ask you this question. You can think about it while you're sitting down. It appears that the D.C. Circuit and the Second Circuit have rejected the very argument that you're making in the cases of Warshawski and NLRB v. Local Union No. 3, IBEW. So could you think about that while you're sitting down and respond to those when you come? Thank you. Good morning, Your Honors. May it please the Court. I'm Greg Lauro for the National Labor Relations Board, asking the Court to enforce the Board's order. I will get right to a point you were discussing with opposing counsel just a minute ago. It's the Board's position that the Supreme Court addressed the free speech issue in the IBEW case that we've been discussing. And my opponent, I understand, claims that case was limited to picketing. But that ignores both the broader reasoning in the case, which went beyond picketing, and how, as you were just discussing, both courts of appeals to have addressed the issue viewed IBEW more broadly, as the Board did. And we see this in the Court's language, some of which Your Honors noted this morning. While the case did involve picketing and conversations, that's undisputed, the Supreme Court, in reviewing the legislative history and purpose of Section 8B.4, it's now I.B., recognized that the words induce and encourage in that section are broad enough to include in them every form of influence and persuasion. Then in addressing the First Amendment issue, with that broad definition of inducement in mind, held that the prohibition of inducement or encouragement of secondary pressure carries no unconstitutional abridgment of free speech. Which is why, as Your Honors were noting, the D.C. Circuit in the Warshawski case, to take one example, said that the Supreme Court in IBEW emphatically held that the prohibition of inducement or encouragement of secondary pressure, which covers every form of influence and persuasion, including speech, carries with it no unconstitutional abridgment of free speech. And one reason we view the Supreme Court as taking that broader approach, and this is what the Court noted this morning, is that the Supreme Court thought about it in a broad way and was focusing on the ends that Congress was trying to avoid, the secondary boycott itself, not just the inducement. And the Court said, and I believe Your Honors quoted this, it was the objective of the union's secondary activities, not the quality of the means employed to accomplish that objective, which was the dominant factor motivating Congress to enact this provision, and to exempt certain means of achieving that objective would vitiate the statute's underlying purpose. So I think it's fair to say the Supreme Court has addressed the First Amendment issue before this Court now, and it remains the binding applicable precedent. I appreciate that my opponent cites a series of contemporary First Amendment cases that get into strict scrutiny and other context, but there's two cases that two things. Those cases don't address. They don't address the Supreme Court's decision in IBEW, and they don't address the secondary boycott rule. Therefore, they don't undermine that binding Supreme Court precedent. And I... So what we're talking about here is not speech in the sense of the marketplace of ideas of... So if somebody were to call the employee and say, I really think that you should recognize this picket out of the blue, there might be nothing wrong with it. But what do you say that this is what the secondary boycott law is talking about? Disputes between employers at a particular site who have a stake in the work that's being done. Right. And that's kind of a different context than the First Amendment marketplace of ideas. Right. The gravamen and the concern here is that when unions act to ask what we call neutral employees, they work for the employer who's not involved in the dispute, say, you stop work to help support our dispute with another employer, you're widening the dispute, you're unnecessarily causing further harm to the free flow of commerce. Creating labor unrest. Right. Right. And Congress came up with a solution to that problem, which is the secondary boycott rule before us. And in IBEW, the Supreme Court accepted that solution as constitutionally permissible. And these other cases, my opponent cites, I appreciate the effort, just don't address IBEW. In absence of something from the Supreme Court reversing IBEW, or more directly addressing it than what we have, that stands, I would submit, as the binding precedent this Court should follow. What is the binding precedent? It's IBEW. Oh, IBEW. Yes. Sorry, Your Honor. It's IBEW's holding that what this statute prohibits passes constitutional muster. And if I may, Your Honor, just a couple quick responses to what my opponent said this morning. Because he recognizes he needs strict scrutiny to win. We've addressed that. We don't have a case addressing IBEW and this particular secondary boycott. So again, we're left with IBEW as the governing Supreme Court precedent, which the Board followed. No one's disputing that. I understand he mentions the DiBartolo case. But the thing about DiBartolo, like everything else my opponent cites, is, again, it doesn't mention IBEW, much less overturn it, which is what my opponent really needs. That addressed an appeal to consumers at a mall, not an appeal to neutral workers to stop work, which is the gravamen of the secondary boycott we're addressing. Right. So you say, well, it doesn't make any difference whether you do it by picket line, carrying signs, or if you do it by email. According to the Supreme Court, as followed by the DC and Second Circuit, yes, the Supreme Court and those other courts understood that inducement encouragement was that broad, covering all forms of persuasion, where the intent is to create what Congress thought was the substantive evil of a secondary boycott because of how it expands the dispute and the harm. And so I think that's where we are with that binding precedent and with the understanding that other cases cited, like Sinning Smith, if I'm saying that right, in the 28J letter, just gets us back to the same square one. Does it address the binding precedent in IBEW? No. Does it address this particular provision which the Supreme Court approved of in IBEW? No. And not to be a broken record, I just think we're back to that binding Supreme Court precedent. So unless Your Honors have further questions for me, I thank the Court for its time. Thank you, counsel. Your Honor, in the IBEW case, which Your Honor referred to, the Second Circuit expressly recognized that the other, older IBEW case involved picketing. Although I would concede that its holding was that the inducement, the words were unlawful, it said, it recognized that the case on which the Board rests entirely was a picketing case, that is, the old IBEW case. Number two, I have not conceded that we have to establish scrutiny. Intermediate scrutiny applies here because speech is involved and because it's widely under-inclusive. And secondary boycott may be an evil, but if this statute that Congress wrote said any boycotting by asking people not to work because you don't want to work alongside a company that does business with Russia or Israel, that boycotting law itself would be unconstitutional. So what I'm facing, and we're all facing really, is the Board taking the position that labor speech is not deserving of protection that any other speech is. And the Supreme Court has rejected that in NIFLA. In NIFLA was a situation where the Court said, we don't give a special pass to professional speech. Why is a labor speech more restricted? How would intermediate scrutiny application work here? Because the government has to establish a compelling reason for this kind of limitation on speech, which is what it is. And the problem is it's widely under-inclusive, not narrowly tailored, because it allows everyone else to engage in exactly the same kind of effort to ask people not to work and targets only the speech of unions. So that it wouldn't survive any intermediate scrutiny. And I'll just conclude by saying that if this Court reads I.B.W. 501 from the 60s as saying labor speech is not deserving of the same First Amendment protection as Mr. Cohn, who wore a T-shirt that had fuck the you-know-what on it, fuck the draft on it, or of O'Brien who burns flags, or of Sorrell regulates, then, you know, I've lost the case. I agree. But I think labor speech is entitled to First Amendment protection. Thank you. Thank you. Thank you to both counsel for your arguments. Case just argued is submitted for decision by the Court. That completes our calendar for the morning. And for the week, we are adjourned. Thank you.
judges: Schroeder, Rawlinson, Lasnik